UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALIOU CISSE,

                Petitioner,

    v.

MARKWAYNE MULLIN, *et al.*,

                Respondents.

Case No. C26-1040-MLP

ORDER

Petitioner Aliou Cisse, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging his redetention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington. (Dkt. # 1.) Respondents filed a return (dkt. # 5), supported by the sworn declaration of ICE Deportation Officer Karl Douglas (dkt. # 6) and an unsworn declaration from their counsel, Lawrence Van Daley, attaching portions of Petitioner's A-file (dkt. # 7). Petitioner filed a traverse. (Dkt. # 8.) After briefing was complete, Petitioner filed a notice that he appealed his removal order on April 16, 2026 (dkt. # 9). Having considered the parties' submissions and the governing law, the Court GRANTS the petition (dkt. # 1).[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 1

# I.    BACKGROUND

On July 16, 2023, Petitioner, a citizen of Senegal, entered the United States and was apprehended by U.S. Customs and Border Protection. (Dkt. # 1, ¶¶ 21-22; Douglas Decl., ¶¶ 3-4; Van Daley Decl., Ex. 1 at 4.) He was processed for expedited removal and asserted a credible fear claim. (Douglas Decl., ¶ 5; Van Daley Decl., Ex. 1 at 4.) A credible fear interview could not be conducted because no Wolof language interpreter was available. (Douglas Decl., ¶ 6; dkt. # 8 at 1.)

On September 3, 2023, Petitioner was released on interim parole subject to conditions of release. (Dkt. # 1, ¶ 23.) Although the record contains no documentation of the conditions, Officer Douglas states that they included reporting requirements and that parole was authorized for one year. (Douglas Decl., ¶¶ 7-8.)

On October 24, 2023, Petitioner filed a Form I-589 application for asylum and withholding of removal. (Dkt. # 1, ¶ 2; Van Daley Decl., Ex. 1 at 5.) At some point thereafter, Petitioner relocated from New York to Washington. (Dkt. # 1, ¶ 24; Douglas Decl., ¶ 7.)

On January 9, 2026, ICE agents conducted a vehicle stop in Kent, Washington, detained Petitioner, and served him with a Form I-200 Warrant for Arrest and a Form I-862 Notice to Appear. (Douglas Decl., ¶¶ 9-10; Van Daley Decl., Exs. 1-3.) Both documents allege removability but neither identifies a reason for detention. (*See* Van Daley Decl., Exs. 2-3.) Officer Douglas states that Petitioner was "detained for violating his parole conditions including: failure to report and failure to update his address." (Douglas Decl., ¶ 9.)

Petitioner was ordered to appear before an immigration judge ("IJ") on February 2, 2026. (Van Daley Decl., Ex. 3 at 2.) Officer Douglas states that Petitioner was scheduled for a merits

ORDER - 2

hearing on March 16, 2026, which was continued on Petitioner's motion to April 9, 2026. (Douglas Decl., ¶ 11.)

On March 26, 2026, Petitioner filed the instant habeas petition. (Dkt. # 1.)

On April 9, 2026, the IJ found Petitioner inadmissible, denied asylum, withholding, and deferral of removal, and ordered him removed to Senegal. (Van Daley Decl., Ex. 4.) On April 16, 2026, Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"). (Dkt. # 9.)

## II.    DISCUSSION

Petitioner contends his redetention violated his Fifth Amendment right to procedural due process. (Dkt. # 1, ¶¶ 46-49.) Respondents argue that his redetention was mandatory, that he violated his parole conditions, and that no further process was due. (Dkt. # 5 at 5-10.)

### A.    Legal Standards

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner may obtain relief by proving by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

Detention of noncitizens is governed by §§ 235-36 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §§ 1225-26. Section 1226(a) provides the "default rule," allowing discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

Section 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United

ORDER - 3

States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission are generally subject to mandatory detention under § 1225(b) and may be released only on parole "for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Humanitarian parole is a discretionary, case-by-case exception to detention. 8 U.S.C. § 1182(d)(5)(A). Regulations require that parolees "present neither a security risk nor a risk of absconding[.]" 8 C.F.R. § 212.5(b). A grant of parole therefore reflects a determination that (1) urgent humanitarian reasons or significant public benefits justify release and (2) the person is not a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A), 8 C.F.R. § 212.5(b).

Parole may terminate automatically upon the individual's departure from the United States or "at the expiration of the time for which parole was authorized," without written notice. 8 C.F.R. § 212.5(e)(1). Otherwise, it may be terminated if the purpose of parole has been accomplished or if an authorized Department of Homeland Security ("DHS") official determines that neither humanitarian reasons nor public benefit warrants continued presence in the United States. *Id.*; *see also* 8 U.S.C § 1182(d)(5)(A). In those circumstances, written notice of termination is required. 8 C.F.R. § 212.5(e)(2)(i).

Following termination of parole, "any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [an authorized DHS official] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i). Continued detention thus must rest on an individualized assessment; otherwise, renewed parole is required.

ORDER - 4

Where the nominal parole period has lapsed but DHS leaves the noncitizen at liberty and continues to process applications or authorize employment, courts have inferred that parole was effectively continued beyond the stated expiration date. In that circumstance, any later termination must comply with the written-notice procedures of 8 C.F.R. § 212.5(e)(2)(i). *See Telenchana v. Hermosillo*, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026); *Dieng v. Hermosillo*, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026).

**B.    Detention Authority**

Respondents contend that Petitioner, as an "applicant for admission" defined in § 1225(a)(1), is subject to mandatory detention under § 1225(b). (Dkt. # 5 at 5-6.) Although Respondents do not clarify whether § 1225(b)(1) or (b)(2) applies, they refer to a credible fear determination, which is governed by (b)(1). Such noncitizens "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *see Jennings*, 583 U.S. at 297.

Petitioner was initially released on discretionary parole. Respondents assert that parole expired after one year and that no further process was required. (Dkt. # 5 at 6.) However, parole was effectively extended when the government continued to process Petitioner's asylum application and left him at liberty for well over a year. In the alternative, Respondents argue that parole was revoked due to violation of its conditions. (*Id.*) Yet the record shows no compliance with the governing regulations, which require a determination by an authorized official that neither humanitarian reasons nor public benefit warrants continued parole.[2] *See* 8 C.F.R. § 212.5(e)(2)(i).

---

[2] Respondents cite *Matter of Li*, 29 I. & N. Dec. 66, 70 (BIA 2025), in which the BIA held that when parole is terminated, a noncitizen is returned to custody under § 1225(b) pending removal proceedings. (Dkt. # 5 at 6.) *Matter of Li* did not address the process required to terminate parole and therefore does not control here.

ORDER - 5

In any event, even if § 1225(b) applies here, "statutory authority to detain does not obviate Respondents' obligation to comply with due process." *Telenchana*, 2026 WL 696806, at *10; *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

**C.      Redetention Procedure**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B.*, 795 F. Supp. 3d at 1321 n.4 (collecting cases).

*1.      Private Interest*

Petitioner's interest in remaining free from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025). During the more than two years he was at liberty, Petitioner applied for asylum, lived openly in his community, obtained a driver's license and maintained employment. (Dkt. # 1, ¶ 25; dkt. # 8 at 2.)

Respondents argue that Petitioner's liberty interest is diminished because his parole was subject to "explicit conditions" that he violated and because it contained an expiration date. (Dkt.

ORDER - 6

# 5 at 8.) They have not, however, produced any documentation of the conditions, the expiration date, or the alleged violations, and they acknowledge that no Notice to Appear was filed until his redetention, suggesting the absence of active removal proceedings. Under these circumstances, Petitioner's significant liberty interest weighs in his favor.

### 2.   Risk of Erroneous Deprivation

Respondents assert that Petitioner's alleged violations are "objective" and "fully documented in ICE records," but they have not submitted those records. (*See* dkt. # 5 at 9.) It is undisputed that ICE did not inform Petitioner of the alleged violations, allow him to cure or explain them, or provide any opportunity to contest the factual basis for redetention before revoking his release. Respondents further contend that Petitioner received a full merits hearing before an IJ, but the IJ's decision does not address the basis for the revocation of his release and, in any event, is subject to appeal. (*See id.*; Van Daley Decl., Ex. 4.)

The risk of erroneous deprivation is heightened by DHS's apparent failure to follow its own parole-termination procedures under 8 C.F.R. § 212.5(e)(2)(i). Courts confronted with similar facts have found that "the risk of erroneous deprivation is significant" when DHS disregards those procedures. *Torres v. Hermosillo*, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026); *see also Telenchana*, 2026 WL 696806, at *7-10; *Dieng*, 2026 WL 411857, at *6-8; *Zavorin v. Wamsley*, 2026 WL 309733, at *4 (W.D. Wash. Feb. 5, 2026). The second *Mathews* factor therefore favors Petitioner.

### 3.   Governmental Interest

Respondents argue that the governmental interest in detention is heightened here because Petitioner has demonstrated a "prolonged disregard for release conditions," yet, again, they

ORDER - 7

provide no evidence of those conditions, the alleged violations, or any opportunity afforded to Petitioner to respond. (Dkt. # 5 at 9.)

The government has legitimate interests in enforcing immigration laws and ensuring appearance at proceedings. Respondents, however, identify no concrete way in which providing a short, pre-deprivation custody hearing before redetention would materially impede those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

In sum, the *Mathews* factors strongly favor Petitioner. Habeas relief is therefore warranted. Given the absence of lawful process at the outset of redetention and the lack of exigent circumstances, release is the appropriate and constitutionally required remedy.[3] This conclusion aligns with a broad consensus among district courts. *See*, *e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (Where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025). The Court recognizes that after Petitioner's redetention, circumstances changed when a removal order was entered, and therefore does not opine on renewed detention pursuant to appropriate statutory and regulatory authority and compliant with constitutional standards.

---

[3] Although the petition sought additional injunctive and declaratory relief, Petitioner appears to have abandoned those claims in his traverse, in which he seeks only immediate release or, in the alternative, a hearing before a neutral decisionmaker. (Dkt. # 8 at 10.)

ORDER - 8

### III.    CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's petition for writ of habeas corpus (dkt. # 1). Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority. Within **two (2) business days**, Respondents shall file a status report with the Court regarding Petitioner's release.

The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 20th day of April, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 9